on Mrs. Spalding's pasture. Kenan's pasture is between Mrs. Spalding's and that of defendant, and the public road runs through Kenan's pasture. There is no fence between Mrs. Spalding's pasture and that of Kenan, and wherever the fence between Kenan and Sawyer crossed the public road there were gates placed. In driving defendant's cattle from Mrs. Spalding's pasture, having to pass through Kenan's land to reach defendant's, there was some difficulty in driving through, the cattle separating. To the knowledge of Roberts, a witness who helped to drive the cattle, none of Kenan's were marked, and he would have known whether they had any of Kenan's. In shipping, Roberts put the last calf aboard belonging to Sawyer. In driving through, all the calves with Sawyer's mark were gathered up. Roberts shipped all the calves himself in 1888 and 1889, and they were all in Sawyer's mark. Whenever Sawyer drove cattle, Jacob Green minded the gate between Sawyer's and Kenan's pastures to see that cattle belonging to any one else did not come in, and did not see any belonging to Kenan. Frank Sawyer does not know what became of the calf of Kenan, which had been marked with defendant's mark, and did not take possession of it.

W. deR. Barclay and W. G. Charlton, for plaintiff in error. Lester & Ravenel, C. L. Livingston and Gignilliat & Stubbs, contra.

---

Ayers et al. v. McCalla, mayor, et al.·

Atkinson, J.—1. The legislative scheme for the establishment and maintenance of a system of public schools in the city of Conyers, as expressed in the act approved September 11th, 1889 (Acts of 1889, page 1287), contemplates the exercise by the municipal authorities of the power to raise revenue for that purpose either by taxation or the issue of bonds, or both. In the former case the power is derived from the provisions of the act itself, after its adoption in the manner prescribed in section 10, without any fur-

ther approval by a popular vote. In the latter, a separate vote of the people, in addition to that adopting the .act, is necessary to confer the power. Where, therefore, an election was held in conformity with the provisions of the act, for the purpose of determining whether it should go into effect, and the popular vote was in favor of the establishment of the system of schools provided for, the mayor and council may lawfully levy an annual tax "not to exceed five tenths of one per cent. on the taxable property of said city, for the purpose of establishing and maintaining said public schools," notwithstanding the fact that at another election held for the purpose of determining whether or not the municipal authorities should also issue bonds, the popular vote was against the issuing of the same. The denial of the power to issue bonds in no manner impairs or interferes with the exercise of the power to tax expressly conferred by the terms of the act, after its ratification by the people.

2. Under the facts disclosed in the record, the court did not err in refusing the injunction.          *Judgment affirmed.*

February 18, 1895.

Petition for injunction. Before Judge CLARK. Rockdale county. November 24, 1894.

The plaintiffs, as citizens and tax-payers of Conyers, prayed for injunction to restrain the collection of a tax imposed by the mayor and aldermen, for educational purposes. It appears that on September 16, 1893, the question of the establishment of schools as provided by the act cited in the head-note, was submitted to the voters of the city at an election, and the system was adopted and schools have since been conducted thereunder, to meet the expenses of which the tax here complained of was levied. On December 2, 1893, the mayor and aldermen, in order to raise funds to procure suitable lots and buildings and to equip the same, submitted to the qualified voters at an election the question of issuing bonds as provided by sections 11 and 12 of the act in question; at which election the bonds failed to receive two thirds of the votes cast. The plaintiffs contended that the levy of the tax was in violation of section 6 of this act, and of the constitution, art. 7, sec. 7, par. 1, the same not being for temporary loans to

supply casual deficiencies of revenue; and that section 7 of the act only authorized the levy of taxes to pay the bonds to be issued under the other provisions of the act, but if any other authority was given by said section, it was in violation of the constitutional provision cited, and schools under the act could not be maintained except by issuing bonds and levying a tax to pay the same.

JAMES C. BARTON and JOHN A. WIMPY, for plaintiffs.

A. C. McCALLA, G. W. GLEATON and GLENN & IRWIN, for defendants.

---

## BLALOCK et al. v. SMITH et al.

ATKINSON, J.—This case is controlled by that of *Greenwood* v. *Boyd & Baxter Furniture Factory*, 86 *Ga.* 582. According to the principle there ruled, the court erred in dismissing the *certiorari*.

February 27, 1895. *Judgment reversed.*

*Certiorari.* Before Judge BARTLETT. Houston superior court. April term, 1894.

Suit was brought in a magistrate's court against Smith and Blasingame, upon a promissory note for $75 with interest, etc. There was a judgment for defendants. Plaintiffs took the cause by *certiorari* to the superior court. The *certiorari* was dismissed upon the ground that the errors complained of were not errors of law, but mixed questions of law and fact. The note sued on was dated September 5, 1890, due sixty days after date, payable to plaintiffs or bearer, and contained a mortgage upon a printing-press and outfit, for which the note was given. On the trial plaintiffs introduced this note and closed. Defendants pleaded the general issue, and payment by way of release. Smith testified, that the note was one of two given for the printing-press etc.; that Wright at one time had the notes for collection as attorney for plaintiffs, and foreclosed the mortgage; that